## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**JEFFREY GRIGGS,**
        **Petitioner,**

**v.**                                              **Case No. 3:10cv340/LAC/MD**

**EDWIN G. BUSS,**
        **Respondent.**

_____

### REPORT AND RECOMMENDATION

Before the court is a petition for writ of habeas corpus filed pursuant to Title 28 U.S.C. § 2254 (doc. 1).  Respondent has filed a response (doc. 18) to which petitioner has replied (doc. 21).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rule 8(a) of the Rules Governing Section 2254 Cases.  It is further the opinion of the undersigned that the pleadings and attachments before the court show that petitioner is not entitled to relief, and that the petition is without merit and should be denied.

**BACKGROUND AND PROCEDURAL HISTORY[1]**

On January 7, 2005, petitioner, Jeffrey Griggs, was charged by information in the Circuit Court of Walton County, Florida with two counts of sexual battery on a victim less than twelve years old, in violation of Fla. Stat. § 794.011(2)(a). (Ex. P, p. 7).

The case was tried to a jury in August, 2005.  The victim, J.D.A., testified that when she was eight or nine years old, Mr. Griggs, her step-father, had assaulted her orally and anally on at least two occasions in late 2004.  She wrote a page in a diary briefly describing the incidents and gave it to her mother.  She further testified that Mr. Griggs had a scar on his leg near his "private" (doc. 18, ex. E, p. 32).[2]  A cousin testified that Mr. Griggs had similarly assaulted her when she spent the night with J.D.A.  A jury found Mr. Griggs guilty on both counts and he was sentenced to two concurrent terms of life imprisonment (ex. G, p. 5).  The conviction and sentences were affirmed on direct appeal without opinion (ex. J), and Mr. Griggs filed a timely motion for post-conviction relief pursuant to Rule 3.850, Fla. R. Crim. P.  The trial court held an evidentiary hearing at which Mr. Griggs was represented by appointed counsel.  At the conclusion of the hearing the court announced its findings of fact and conclusions of law on the record (doc. 22, ex. AA, pp. 59-61), which it later adopted in a written order (doc. 22, ex. BB, pp. 205-206).  Mr. Griggs' appeal of the order denying his motion for post-conviction relief was unsuccessful (ex. S), and he now seeks federal habeas relief.

---

[1]  The facts stated herein are those presented at trial and viewed in the light most favorable to the prosecution.  Where there are conflicting inferences and disputes exist, this Court must presume that the jury resolved such conflicts in favor of the prosecution, and must defer to that resolution.  *Martin v. State of Alabama*, 730 F.2d 721,724 (11th Cir. 1984).  Although this court is not called on to address directly the sufficiency of the evidence, the evidence presented to the jury plays a major part in the court's analysis.

[2]  Hereafter all references to exhibits will be to doc. 18 unless otherwise noted.

## STANDARD OF REVIEW

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Pub. L. 104-132, § 104, 110 Stat. 1214, 1218-19.  In relevant part, § 2254 provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2006).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3]  Section 2254(d)(2) must be divided into two separate inquiries:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

---

[3]  Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring).  The federal habeas court "determining whether [it] should overturn the state courts' [sic] rejection of the claim at issue" should "review the highest state court decision disposing of the claim." *Harvey v. Warden, Union Corr. Inst.*, 629 F.3d 1228, 1237 (11ᵗʰ Cir. 2011); *see Knowles v. Mirzayance*, 556 U.S. 111, 129 S. Ct. 1411, 1419, 173 L. Ed. 2d 251 (2009).

Following the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal state court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 1172, 155 L. Ed. 2d 144 (2003). The law is "clearly established" only when the Supreme Court's holding embodies the legal principle; dicta in opinions is not controlling. *Thaler v. Haynes*, __ U.S. __, 130 S. Ct. 1171, 1173, 175 L. Ed. 2d 1003 (2010); *Bowles v. Sec'y for Dep't of Corr.*, 608 F.3d 1313, 1315 (11ᵗʰ Cir. 2010). Furthermore, a federal court of appeals decision, "even a holding directly on point," cannot clearly establish federal law for § 2254 purposes. *Bowles*, 608 F.3d at 1316 (citing *Renico v. Lett*, __ U.S. __, 130 S. Ct. 1855, 1866 (2010)).

After identifying the governing legal principle, the court determines whether the state court adjudication is "contrary to" clearly established Supreme Court case law, either because the state court "applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or because it "confronts a set of facts that is materially indistinguishable from a decision of [the] Court but reaches a different result." *Brown v. Payton*, 544 U.S. 133, 141, 125 S. Ct. 1432, 1438, 161 L. Ed. 2d 334 (2005); *see* § 2254(d)(1). The state court does not need to cite to Supreme Court cases or even be aware of them, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002). If the state court decision is contrary to clearly

established federal law, the federal habeas court must independently consider the merits of the petitioner's claim.

If the state court decision is not contrary to clearly established federal law, the federal habeas court must then determine whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. § 2254(d)(1); *Williams*, 529 U.S. at 412–13, 120 S. Ct. at 1523. The federal court defers to the state court's reasoning unless the state court's application of the legal principle was "objectively unreasonable" in light of the record the court had before it. *Williams*, 529 U.S. at 409, 120 S. Ct. at 1521; *see Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1400, 179 L. Ed. 2d 557 (Apr. 4, 2011) (holding new evidence introduced in federal habeas court has no bearing on § 2254(d)(1) review, rejecting dicta in *Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam)); *cf. Bell v. Cone*, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). A state court's application of federal law is objectively unreasonable when the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Brown*, 544 U.S. at 141, 125 S. Ct. at 1439. However, a state court may "decline to apply a specific legal rule that has not been squarely established by [the Supreme Court]" without running afoul of the "unreasonable application" clause. *Knowles*, 129 S. Ct. at 1419. Notably, even a state court's incorrect application of law will not warrant federal habeas relief unless it is also objectively unreasonable. *See Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 785-86, 178 L. Ed. 2d 624 (2011).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based

on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   28 U.S.C. § 2254(d)(2).   As with the "unreasonable application" clause, the Supreme Court applies the "objectively unreasonable" test to the state court's factual determination.  *Miller-El v. Cockrell*, 537 U.S. 322, 324, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).  The petitioner must advance clear and convincing evidence that the state court's factual determination was "objectively unreasonable" to rebut the presumption that the determination was correct.  *Gill v. Mecusker*, 633 F.3d 1272, 1287 (11th Cir. 2011); *see* § 2254(e)(1).

The Eleventh Circuit Court of Appeals in *Gill* clarified the federal habeas court's role in reviewing a state court's decision by squarely addressing the "unreasonable application of law" and the "unreasonable determination of facts" tests.  Mr. Gill's petition alleged he was denied his Sixth Amendment right to counsel.[4]  The Eleventh Circuit granted a limited Certificate of Appealability to determine the precise issue of the validity of "summary affirmance by a state appellate court of a trial court's decision based on potentially flawed reasoning."  *Id.* at 1286.[5]

The court acknowledged the well-settled principle that summary affirmances, such as the Second DCA's, are presumed adjudicated on the merits and warrant

---

[4]  Mr. Gill twice moved the trial court in pretrial hearings to allow him to waive his Sixth Amendment right to counsel.  *Gill*, 633 F.3d at 1275-1284; *see* U.S. Const. amend. VI.  The trial court denied the first motion, finding that Mr. Gill's waiver of counsel was not knowing and intelligent. *Gill*, 633 F.3d at 1278; *see Faretta v. California*, 422 U.S. 806, 835, 95 S. Ct. 2525, 2541, L. Ed. 2d 562 (1975) (accused must "knowingly and intelligently" waive representation).  It also denied the second motion, but it allowed Mr. Gill to act as co-counsel for himself only for determining trial strategy. *Gill*, 633 F.3d at 1284. He was convicted, and the Florida Second District Court of Appeals ("Second DCA") affirmed without opinion the trial court's denial of post-conviction relief.  *Id.* at 1284-85.  Mr. Gill then filed a petition in federal district court, which petition the court denied with prejudice.  *Id.* at 1284-85.

[5]  The court reviewed Gill's claims that the federal habeas court erred in two respects.  First, Gill argued the habeas court erred by "failing to review on the merits the 'legally and factually unsupported rationale' articulated by the state trial court." 633 F.3d at 1288.  Second, Gill argued the habeas court's decision was *per se* erroneous because it "relied on a finding that the state court did not make." *Id.*  Gill averred the trial court denied relief by finding that Gill's waiver was not knowing and intelligent, while the federal district court denied relief by finding that Gill "never clearly and unequivocally" waived his right to counsel. *Id.*

deference.  *Id.* at 1288 (citing *Harrington*, 131 S. Ct. at 784-85 and *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002)).  "A judicial decision and a judicial opinion are not the same thing," and the Supreme Court has confirmed that determining whether the state court unreasonably applied the law or unreasonably determined the facts requires only a decision, not an opinion.  *Id.* at 1291 (citing *Harrington*, 131 S. Ct. at 784).  Yet, the Supreme Court has never squarely addressed whether under the "unreasonable application" test a federal habeas court "looks exclusively to the objective reasonableness of the state court's ultimate conclusion or must also consider the method by which the state court arrives at its conclusion."  *Id.* at 1289 (quoting *Neal v. Puckett*, 286 F.3d 230, 244-45 (5th Cir. 2002) (summarizing the emerging circuit split)).  The Eleventh Circuit court concluded that district courts must apply the plain language of § 2254(d) and answer the "precise question" raised in a claim based on the state court's ultimate legal conclusion, and should not "evaluate or rely upon the correctness of the state court's process of reasoning." *Id* at 1291 (agreeing with the Fifth Circuit court in *Neal*, *supra*).  In short, the court stated, "the statutory language focuses on the result, not on the reasoning that led to the result."  *Id.*[6]

In light of *Gill*, the "unreasonable determination of facts" standard plays a limited role in habeas review because the district court considers the reasonableness of the trial court's fact finding only to the extent that the state court's ultimate conclusion relied on it.  *Id.* at 1292.  A federal habeas court can consider the full record before it to answer "the only question that matters[:]" whether the state court's decision was objectively unreasonable.  *Lockyer*, 538 U.S. at 64, 123 S. Ct. at 1168; *Gill*, 133 F.3d at 1290.

The Supreme Court recently summarized the meaning and function of habeas corpus in the federal system:

---

[6]  Applying this analysis, the court rejected Gill's claim that the district court erred by relying on different grounds than the trial court because Gill's basic premise—the Second DCA's summary affirmance relied on the trial court's statements from the bench—was not dispositive.  *Id.* at 1288.

> Under §2254, a habeas court must determine what arguments or theories supported or . . . could have supported [ ] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding of a prior decision of this Court.

*Harrington,* 131 S. Ct. at 786.  Federal habeas relief is precluded "so long as fairminded jurists could disagree on the correctness of the state court's conclusion." *Id.* at 786 (internal quotations omitted).

The federal habeas court will take the final step of conducting an independent review of the merits of the petitioner's claims only if it finds that the petitioner satisfied AEDPA and § 2254(d).  *See Panetti v. Quarterman*, 551 U.S. 930, 953-54, 127 S. Ct. 2842, 2858-59, 168 L. Ed. 2d 662 (2007); *Jones v. Walker*, 496 F.3d 1216, 1228 (same).  The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).  When performing its review under § 2254(d), the federal court must resolve all claims for relief regardless of whether habeas relief is granted or denied. *Clisby v. Jones*, 960 F.2d 925, 936 (11th Cir. 1992) (en banc); *see Puiatti v. McNeil*, 626 F.3d 1283, 1307 (11th Cir. 2010).  The federal court must also bear in mind that state court factual determinations are presumed to be correct, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Crawford v. Head*, 311 F.3d 1288, 1295 (11th Cir. 2002) (AEDPA provides for a "highly deferential standard of review" for factual determinations made by a state court); *Jackson*, 112 F.3d at 824-25 (noting petitioner has heavier burden to overcome the presumption of factual correctness).  "If this standard is difficult to meet, that is because it was meant to be." *Harrington*, 131 S. Ct. at 786.

## OTHER CONTROLLING LEGAL PRINCIPLES

**Ineffective assistance of counsel.**

Petitioner contends in some of his claims for relief in this court that he was denied his constitutional right to the effective assistance of counsel.  The

Constitution provides "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. To prevail on a claim of ineffective assistance of counsel, the petitioner must prove: (1) "counsel's representation fell below an objective standard of reasonableness;" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 677-678, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984); *see also Berghuis v. Thompkins,* __ U.S. __, 130 S. Ct. 2250, 2264-65, 176 L. Ed. 2d 1098 (2010). Reasonableness of representation does not implicate what is possible, prudent, or even appropriate, but only what is "constitutionally compelled." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (citing *Burger v. Kemp*, 483 U.S. 776, 794, 107 S. Ct. 3114, 3126, 97 L. Ed. 2d 638 (1987)).

In evaluating counsel's performance, reviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable, professional assistance. *Chandler*, 218 F.3d at 1314. Courts must make "every effort . . . to eliminate the distorting effects of hindsight" and must evaluate the reasonableness of counsel's performance "from counsel's perspective at the time." *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065; *see also, e.g., Chandler*, 218 F.3d at 1314 (the *Strickland* standard compels courts to "avoid second-guessing counsel's performance"). The Eleventh Circuit has summarized the standard and the burden:

> Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so. This burden, which is petitioner's to bear, is and is supposed to be a heavy one. And, "[w]e are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial . . . worked adequately." *See White v. Singletary*, 972 F.2d 1218, 1221 (11th Cir. 1992). Therefore, the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.

*Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994); *see also, e.g., Waters v. Thomas*, 46 F.3d 1506, 1518 (11th Cir. 1995) (the test is not whether counsel could have done more); *Atkins v. Singletary*, 965 F.2d 952, 960 (11th Cir. 1992) (". . . the Constitution requires a good deal less than maximum performance.").

In order to meet the prejudice prong of the *Strickland* standard, petitioner must allege more than that the unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding."  466 U.S. at 693, 104 S. Ct. at 2067; *see Marquard v. Sec'y for Dep't of Corr.*, 429 F.3d 1278, 1305 (11th Cir. 2005). Petitioner must show a reasonable probability exists that the outcome would have been different.  *Marquard*, 429 F.3d at 1305 (petitioner's burden under the prejudice prong is high); *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.  In applying *Strickland*, the court may dispose of an ineffective assistance claim if petitioner fails to carry his burden on either of the two prongs.  *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.").

The *Strickland* standard exists to prevent petitioners from abusing the post-trial process by escaping rules of waiver or presenting new issues; it should be "applied with scrupulous care" to protect the integrity of the adversary process. *Harrington*, 131 S. Ct. at 788.  As it relates to habeas corpus applications, the Court emphasized:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* at 788 (citations omitted); *Knowles*, 129 S. Ct. at 1420 (2009) (*Strickland* claims evaluated under § 2254(d)(1) require "doubly deferential" judicial review).

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *Strickland*, 466 U.S. at 698, 104 S. Ct. at 2070; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This [inquiry] is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Jones v. Sec'y, Dep't of Corr.*, ___ F.3d ___, 2011 WL 2540573 (11th Cir. Jun. 28, 2011) (quoting *Harrington*, 131 S. Ct. at 785 (2011)). Habeas claims of ineffective assistance of counsel require "doubly deferential" judicial review under §2254(d) and *Strickland*, and petitioners only rarely prevail on this ground. *See Rogers*, 13 F.3d at 386.

<u>Exhaustion and Default</u>

Respondent contends petitioner did not present at least one of his current claims to the state court for review and is defaulted from doing so now, and this court should not consider the claims. A petitioner defaults on an issue unless the petitioner first exhausts available state court remedies so the state has the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (per curiam); *see* 28 U.S.C. § 2254(b)(1)(A) (applicant must exhaust available state court remedies); § 2254(b)(3) (state may rely on exhaustion requirement unless it expressly waives the right). *But see* § 2254(b)(2) (application may be denied on the merits even when applicant fails to exhaust state remedies). To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. *Duncan*, 513 U.S. at 365-66, 115 S. Ct. at 888; *see O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 1732, 144 L. Ed. 2d 1 (1999) (same). This affords the state courts "one full opportunity to resolve any constitutional issues by invoking one complete

round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845, 119 S. Ct. at 1732.

"Fair presentation" requires that, in each claim for relief, the petitioner include a reference to a specific federal constitutional guarantee and a statement of the facts that entitle the petitioner to relief. *Picard v. Connor*, 404 U.S. 270, 278, 92 S. Ct. 509, 513, 30 L. Ed. 2d 438 (1971). To satisfy the exhaustion requirement, the petitioner must present the same facts and claims in state court about which he petitions the federal court. *Id.* Appeals to a broad, general constitutional guarantee also fail to present the "substance" of such a claim to the state court. *See Anderson v. Harless*, 459 U.S. 4, 7, 103 S. Ct. 276, 278, 74 L. Ed. 2d 3 (1982) (petitioner cited federal authority only by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law" (internal quotation marks omitted)). A state prisoner's claim is not fairly presented if the state court "must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material . . .." *Baldwin v. Reese*, 541 U.S. 27, 32, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004). However, when a petitioner squarely raises a federal constitutional claim in state court, the "failure of a state court to mention a federal claim does not mean the claim was not presented to it." *Dye v. Hofbauer*, 546 U.S. 1, 3, 126 S. Ct. 5, 6-7, 163 L. Ed. 2d 1 (2005). And, simply labeling the claim "federal" may be sufficient to fairly present the claim. *Baldwin*, 541 U.S. at 32, 124 S. Ct. at 1351 (dicta).

The Eleventh Circuit requires specific reference to the United States Constitution and favors citations to federal cases. *Zeigler v. Crosby*, 345 F.3d 1300, 1307-08 and n.5 (11th Cir. 2003) ("Cursory and conclusional sentences (unaccompanied by citations to federal law) . . . did not present to the Florida courts the federal claim asserted to us."). This stricter standard requires the petitioner to differentiate a claim under the United States Constitution from one under a state constitution. *Id.* at n.5; *McNair v. Campbell*, 416 F.3d 1291, 1302-03 (11th Cir. 2005)

("a habeas applicant [must] do more than scatter some makeshift needles in the haystack of the state court record") (internal citations omitted)).  If state and federal constitutional law overlap in their applicability to the petitioner's claim, he must raise his issue in terms of the federal right in state court to obtain federal review of the issue.  *Duncan*, 513 U.S. at 366, 115 S. Ct. at 888; *see also Anderson*, 459 U.S. at 7 and n.3, 103 S. Ct. at 278 and n.3 (petitioner's citation to a state-court decision predicated solely on state law is probably insufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited state case advanced a federal claim).

A claim is procedurally defaulted and barred from federal review in two instances: (1) if it was raised in state court and rejected on the independent and adequate state ground of procedural bar or default; or (2) if it was not properly raised in state court and can no longer be litigated under state procedural rules.  *Coleman v. Thompson*, 501 U.S. 722, 734-35 and n.1, 111 S. Ct. 2546, 2557 and n.1, 115 L. Ed. 2d 640 (1991); *Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999); *see also Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001) (state court's rejection of petitioner's constitutional claim on state procedural grounds generally precludes subsequent federal habeas review of that claim).  Unless the federal court determines the state court "clearly and expressly" relied on independent and adequate state grounds, the federal court may address the petition.[7]  *Coleman*, 501 U.S. at 735, 111 S. Ct. at 2557.  However, when any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine, the default is *per se* adequate state grounds independent of the federal question.  *Id.* at 735 n.1, 2557 n.1; *Harris v. Reed*, 489 U.S. 255, 263 n.9, 109 S. Ct. 1038, 1043 n.9, 103 L. Ed. 2d 308 (1989) (federal habeas court need not require a federal claim be presented to a state court if the state court would hold the claim procedurally barred).

---

[7]  The "adequate and independent state grounds" rule applies equally to procedural and substantive state-law grounds.  *Lee v. Kemna*, 534 U.S. 362, 375, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).

The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question. *Lee v. Kemna*, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002). To foreclose federal review, the state procedural bar must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion. *Ford v. Georgia*, 498 U.S. 411, 423-24, 111 S. Ct. 850, 857, 112 L. Ed. 2d 935 (1991). A state procedural bar is firmly established and regularly followed when the state has put litigants on notice of the rule, and the state has a legitimate interest in the rule's enforcement. *Maples v. Allen*, 586 F.3d 879, 888 (11th Cir. 2009) (citing Lee v. Kemna, *534 U.S. at 385-88, 122 S. Ct. at 890-92)).*

To overcome a procedural default so that the federal habeas court may reach the merits of a claim, the petitioner must show either "cause for the default and actual prejudice resulting therefrom," or a fundamental miscarriage of justice. *Kelley v. Sec'y for the Dep't of Corr.*, 377 F.3d 1317, 1345 (11th Cir. 2004); *High v. Head*, 209 F.3d 1257, 1261 (11th Cir. 2000). Cause exists when an external impediment, such as governmental interference or the reasonable unavailability of the factual basis for the claim, prevented petitioner from raising the claim. *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991). To meet the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent" because "it is more likely than not that no reasonable juror would have convicted him." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S. Ct. 851, 867, 130 L. Ed. 2d 808 (1995). Further:

> [A] substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

*Id.* In short, actual innocence claims opening the gate for the miscarriage of justice exception are summarily rejected in virtually every case. *Id.*

**Deference to state court findings of fact**

Under the AEDPA, the state court does not have to explicitly state its findings of fact.  *See Blankenship v. Hall*, 542 F.3d 1253, 1271-72 (11th Cir. 2008).  State court findings of fact can be implied from the opinion and the record when they are necessary to the Rule 3.850 court's rejection of a petitioner's claim.  *Id.*  These implicit findings are entitled to deference.  *Id.*  As explained in the Standard of Review, *supra*, the state court is not required to cite or be aware of the relevant Supreme Court precedent as long as its conclusion is not contradictory.  *Early*, 537 U.S. at 8, 123 S. Ct. at 365.  A summary adjudication with a brief, or total lack of, statement of reasons is still an adjudication on the merits.  *Harrington*, 131 S. Ct. at 780, 784; *see Childers v. Floyd*, 642 F.3d 953, 968 (11th Cir. 2011) ("an 'adjudication on the merits' is best defined as any state court decision that does not rest solely on a state procedural bar.").

## PETITIONER'S GROUNDS FOR RELIEF

Mr. Griggs raises seven grounds for federal habeas relief.  The respondent correctly contends that five of the seven were not properly exhausted in the state courts, cannot be raised in the state courts now, and are not entitled to review in this court.  Those five grounds will be addressed first.

**UNEXHAUSTED CLAIMS**

**Grounds 1. and 2.**          **Court error - Denial of judgment of acquittal and failure to give curative instruction.**

For his first two grounds for relief Mr. Griggs contends that the trial court erred when it denied his motion for judgment of acquittal and further erred when it failed to give a curative instruction after an objection was sustained.  Neither of these grounds presents a federal claim.  Appointed counsel in Mr. Griggs' direct appeal files an *Anders*[8] brief, stating that she was unable to make a good faith

---

[8]  *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

argument that reversible error occurred in the trial court (ex. H).  Mr. Griggs filed a *pro se* brief contending that the trial court should have granted his motion for acquittal because there was only circumstantial evidence against him.  He argued only Florida law and made no claim that the alleged error was a federal constitutional violation (ex. I, pp.  5-10).  In his other relevant ground for relief on direct appeal Mr. Griggs argued that the trial court erred in not giving a curative instruction when the state argued in a way that appeared to shift the burden of proof on the issue of motive.  As with the first ground, Mr. Griggs argued only Florida law and did not present a federal claim to the state court for resolution.  It is too late for Mr. Griggs to return to the state courts to cure the default and the claims are therefore defaulted in this court.  Mr. Griggs is not entitled to federal habeas relief, and the writ should not issue.

**Grounds 3. and 4.**   <u>Ineffective  assistance  of  counsel - failure  to  file  a  motion  to disqualify  trial  judge  and  failure  to  impeach  victim  with inconsistent statements.</u>

In his 3.850 motion Mr. Griggs contended that his counsel was ineffective when he failed to file a motion to disqualify the trial judge.  He argued that the state's medical witness was the trial judge's child's pediatrician, and that the witness and the trial judge had been high school classmates and hated each other.  Mr. Griggs also asserted that his counsel was ineffective in failing to impeach the victim's testimony with prior inconsistent statements (ex. O, pp. 3-5).  The Rule 3.850 court denied relief as to both these claims (doc. 22, ex. AA, pp. 59-61; ex. BB, pp. 205-206). However, Mr. Griggs did not include these grounds in his appeal of the denial of the motion for post-conviction relief, so the claim was not presented to the state appellate court for review and was therefore not exhausted.  It is too late for Mr. Griggs to return to the state courts to cure the default and the claims are therefore defaulted in this court.  Mr. Griggs is not entitled to federal habeas relief, and the writ should not issue.

**Ground 6.**    **Ineffective assistance of counsel - failure to investigate and introduce exculpatory evidence.**

Mr. Griggs' next contention is that counsel was ineffective because he did not present "exculpatory" evidence concerning the size of his penis which, he argues, was too large to penetrate the victim's anus, a fact that should have been made known to the jury (ex. O, pp. 10-11).  The Rule 3.850 court denied relief on this ground without making any fact finding.  The matter is not entitled to review here, however, because the claim was not included in the appeal of the order denying the motion for post-conviction relief. It therefore was not properly exhausted in the state courts and is not entitled to review here.  Mr. Griggs is not entitled to federal habeas relief, and the writ should not issue.

## EXHAUSTED CLAIMS

The respondent concedes that Counts 5 and 7 were properly presented to the state courts and were properly exhausted.

**Ground 5.**    **Ineffective assistance of counsel - failure to present photographic evidence.**

In his motion for post-conviction relief Mr. Griggs contended that he did not have a scar or other mark on his genitalia or on the leg near his genitalia as the victim testified, that he informed his lawyer of this fact prior to trial, but that counsel did take any photographs to rebut the victim's testimony (ex. O, pp. 8-9).

### State Court Decision

At the 3.850 evidentiary hearing counsel testified that he learned of this factual issue on the first day of trial and that he could not get a camera that would make an adequate photograph. Instead, Mr. Griggs testified at trial that he had not committed any of the acts that he was charged with, that he had a felony conviction for possession of a stolen item, and that he did not have any scar on or near his genitals.  Counsel then asked:

Q.    If this jury were interested in seeing your upper thighs, would you be willing to show them?

A.     Yes, sir.

(Ex. F, p.166).  Nothing further was offered, and there is nothing in the trial transcript to suggest that the jury asked to see Mr. Griggs' legs.  The Rule 3.850 court denied relief on this ground as follows:

> As to the photo evidence, the Court finds that he was - - [defense counsel] Mr. Platteborze was within an objective standard of reasonableness and was not deficient.  He did say that the photo could be relevant.  The defendant was given the opportunity to do a showing to the jury.  Mr. Platteborze (sic) did not avail himself of that.

(Doc. 22, ex. AA, p. 60; ex. BB, p. 203).  Respondent concedes that this ground was properly exhausted in the state courts, but argues that it is "utterly devoid of merit." (Doc. 18, p. 12).

### Federal Review of State Court Decision

The trial court's ruling is not helpful.  The announced reason for denying the claim  - no deficient performance and no prejudice - was a conclusion of law, not a finding of fact.  To the extent there was any fact finding, it was to the effect that counsel admitted that the photos could have been relevant and that while Mr. Griggs was given the opportunity to make a showing, no showing was made.  It is unclear whether the Rule 3.850 court was attributing the failure to make a showing to defense counsel or to Mr. Griggs.

Regardless, Mr. Griggs cannot succeed on this ground.  The scar was described by the victim and as a scar and by Mr. Griggs' ex-wife as a stretch mark.  However, that testimony played only a small part in the presentation of the state's case and realistically was not material even if it was relevant because it went only to the issue of identity.  The victim knew Mr. Griggs well as he was her step-father.  She described the sexual assaults in great detail, told of the circumstances in which they occurred, described how she asked her cousin for a diary, how she waited for several months before recording anything in the diary, how she finally told her

cousin what happened and then showed the diary to her mother.  Identity was never an issue.  Moreover, defense counsel testified that he did not learn of the issue until the first day of trial and could not find a camera that would focus sufficiently to show there was no mark.  Finally, counsel's decision to have the defendant testify was clearly an alternative strategy.  The choice of whether the make a showing to the jury was also a strategic one.  In reading the record it is impossible to say what the jury's reaction to the offer may have been.  If they had indicated by facial expression, by gesture or otherwise that they wanted to see Mr. Griggs' legs, the showing would have been made.  If they sat stone-faced, or indicated negatively, defense counsel had to use his judgment on whether to go further and make the showing.  Counsel's decision to proceed in the manner he did was not necessarily a good choice, but neither was it necessarily a bad one.  In the context of a sexual battery case, it is unlikely that the jury wanted to see was Mr. Griggs' legs or genitalia.  Either way, counsel did not have a lot of options, and this court cannot say that his performance was deficient.  Neither can it say that the decision was prejudicial to the defendant. If the mark on Mr. Griggs' leg was a stretch mark (assuming there was a mark), such a mark is not generally thought of as being obvious or pronounced.  Thus, whether Mr. Griggs had a scar or mark was of little consequence in the overall context of the evidence.  The state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d) (1); *Williams, supra*.  Petitioner is not entitled to federal habeas relief, and the writ should not issue.

> 7.    <u>Ineffective assistance of counsel - failure to introduce exculpatory evidence concerning the victim's underwear.</u>

Finally, Mr. Griggs contends that his counsel was ineffective because he did not prove, as he could have, that his DNA did not appear on any of the victim's underwear.  At trial the victim testified that when she was sexually assaulted by Mr. Griggs she hid the underwear she was wearing at the time, which was stained,  "in

purses and behind things."  (Ex. E, p. 39).  The state then moved to introduce photographs of some underwear and purses into evidence.  Defense counsel objected on relevance grounds, arguing that the victim had also testified that she became ill as the result of the sexual assaults and the stains may have resulted from illness.  The court asked the state if there was any medical evidence to "tie this up?" (*Id.* at 41).  The state conceded that there was not.  Defense counsel also argued that even if the photographs were relevant, the prejudice outweighed any probative value of the photographs (*id.*).  The court sustained the objection and the photographs were not introduced in evidence or shown to the jury.

Counsel's error, according to Mr. Griggs' motion for post-conviction relief, was in not introducing a Florida Department of Law Enforcement (FDLE) report showing that nothing in the victim's underwear matched Mr. Griggs' DNA and that there was no blood (ex. O, pp. 11, 47).  Mr. Griggs also testified at the Rule 3.850 hearing that because of the size of his penis there would have been blood in the victim's underwear.  On cross-examination he agreed that "some time" had passed between the assaults and the victim's report of it, such that the underwear was examined by the FDLE "after" the assaults (doc. 22, ex. AA, pp. 33-34).

Relevant to this issue, defense counsel testified as follows:

Q     Was [the FDLE] evidence admitted at trial?

A     It was not.

Q     And so I guess my question is: Having kept the evidence out,, is there any reason you'd want to go back and bring it in?

A     Well, there's an alternative theory I suppose.  I do not believe that the victim, [J.D.A], ever testified that she was wearing the panties prior to an assault and that the panties were taken off shortly after the assault and the panties would, therefore, have biological evidence proving that Mr. Griggs had performed one or more of these acts.  The D.N.A. results that came back from the F.D.L.E. did not identify any blood or semen on the panties that could have been linked to Mr. Griggs.

There was some blood identified in one or more of the panties. And F.D.L.E. suggested that to identify the biological donor of that blood, a buccal swab or other biological swab of [J.D.A] would be necessary. Since the panties were not directly related to any specific incident of abuse and in direct examination, through objections, I stopped the State from introducing any other description of the panties other than that they were soiled and that that was a result of a stomach problem that she encountered or had been experiencing at or prior to the commencement of this, I didn't feel introducing the other biological evidence or, more technically, the lack of evidence implicating Mr. Griggs would be beneficial.

Q      So you made a trial strategy decision?

A      Yes, sir.

(*Id.* at 47-48).

<u>State Court Decision</u>

The Rule 3.850 court found that defense counsel was "within the objective standard of reasonableness; that there has been no demonstration that he was deficient in his performance as trial counsel; and that even if he was deficient and you had to get to the second prong, which this Court certainly doesn't have to , there was no prejudice to the defendant here." (Doc. 22, ex. AA, pp. 60-61). The court made no factual findings to support its legal conclusions.

<u>Federal Review of State Court Decision</u>

The real issue here is whether defense counsel should have used the FDLE reports to show lack of evidence. There were three items of evidence relevant to this discussion with which counsel had to be concerned: (1) the photographs of the victim's underwear and purses, (2) an FDLE report dated January 31, 2005 showing the presence of blood in the underwear (ex. O, pp. 44-45), and (3) an FDLE report dated May 16, 2005 showing that Mr. Griggs' DNA was not found in the underwear (*id.* at 47).

The victim testified that at some indeterminate time she had stains in her underwear.  If the photographs were admitted, the jury would see some unidentified stains, which would have bolstered the victim's testimony.  Counsel could have used the FDLE report, or more likely an FDLE expert, to show that Mr. Griggs' DNA was not present in the underwear.  However, the state could prove by cross-examination that there was blood in the victim's underwear.  That evidence would have been harmful to the defense.  Here Mr. Griggs argues that his penis was so large the assault would have caused bleeding.  In making that argument he ignores the FDLE report of January 31, 2005 which clearly showed that blood was present.  It was not Mr. Griggs' blood, but it was blood nonetheless.   This evidence would have completely demolished Mr. Griggs' theory that the size of his penis would have caused injury and that no injury had been shown.  And counsel certainly understood that if the jury learned that there was blood in the victim's underwear the jurors could reasonably draw their own unfavorable conclusions.   Keeping the blood evidence out was crucial.  Finally, defense counsel used the results of his efforts to his advantage, arguing to the jury that there was no medical evidence, something the state, not the defense, was required to produce if there were any (ex. F, pp. 194-95).

Defense counsel had to make choices.   He succeeded in keeping the photographs out of evidence.  He also kept the blood finding out of evidence.  As he stated, this was part of his trial strategy.   And although his explanation is not altogether clear, there was a very good strategic reason for doing so.  His choice was not an easy one, and it may not even have been the best one, but it was reasonable under the circumstances.  Therefore, state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d)(1); *Williams, supra*.  Petitioner is not entitled to federal habeas relief, and the writ should not issue.

## CERTIFICATE OF APPEALABILITY

**Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(a), Rules Governing Section 2254 Cases. A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.**

**The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 1603-04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).   Therefore, it is recommended that the court deny a certificate of appealability in its final order.**

**The second sentence of new Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If there is an objection to this recommendation by either party, that party  may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.**

**Accordingly, it is respectfully RECOMMENDED:**

**1.      That the 28 U.S.C. § 2254 petition for writ of habeas corpus (doc. 1), challenging the conviction and sentence in *State of Florida v. Jeffrey Griggs* in the Circuit Court of Walton County, Florida, case no. 04-1168, be DENIED and the clerk be directed to close the file.**

**2.      That a certificate of appealability be DENIED.**

**At Pensacola, Florida this 19th day of July 2011.**

/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO PARTIES

**Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  See 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**